IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NEXT FINANCIAL GROUP, INC. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | C.A. No.  4:18-cv-4652 |
| THE OHIO NATIONAL LIFE | § | |
| INSURANCE COMPANY, THE OHIO | § | |
| NATIONAL LIFE ASSURANCE | § | |
| CORPORATION, OHIO NATIONAL | § | |
| EQUITIES, INC. and OHIO NATIONAL | § | |
| FINANCIAL SERVICES, INC., | § | |
| | § | |
| *Defendants.* | § | |

## EXHIBIT A - INDEX OF STATE COURT MATTERS

Defendants, in connection with the removal of this case to the United States District Court for the Southern District of Texas, Houston Division, file the index of state court matters, pursuant to Local Rule 81, as follows:

| | State Court Document | Date Filed |
|---|---|---|
| 1. | Docket Sheet | 11/27/2018 |
| 2. | Civil Case Information Sheet | 11/27/2018 |
| 3. | Plaintiff's Original Petition | 11/27/2018 |
| 4. | Civil Process Request Form | 11/28/2018 |
| 5. | Defendants' Original Answer | 12/7/2018 |

Respectfully submitted,


By:_____/s/ Bill E. Davidoff_____
        Bill E. Davidoff
        Texas Bar No. 00790565
        Fed. ID. No. 19513
        bill.davidoff@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, TX 75202
Tel:  214.939.2000
Fax:  214.939.2090

ATTORNEYS FOR DEFENDANTS


**<u>CERTIFICATE OF SERVICE</u>**

       I certify that on December 10, 2018, a copy of foregoing document was electronically filed though the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney:

    Andrew R. Harvin
    aharvin@drhrlaw.com
    Doyle, Restrepo, Harvin & Robbins, LLP
    The Lyric Centre
    440 Louisiana Street, Suite 2300
    Houston, Texas 77002
    *Attorneys for Plaintiff*

          /s/ Bill E. Davidoff_____
          Bill E. Davidoff

Harris County Docket Sheet

# 2018-84364

**COURT:**   164th
**FILED DATE:**   11/27/2018
**CASE TYPE:**   Debt/Contract - Debt/Contract



### NEXT FINANCIAL GROUP INC
Attorney: HARVIN, ANDREW R.

**vs.**

### OHIO NATIONAL LIFE INSURANCE COMPANY

| Docket Sheet Entries | |
|---|---|
| **Date** | **Comment** |

EXHIBIT A-1

CIVIL CASE INFORMATION SHEET

11/27/2018 11:27:08 AM
Chris Daniel - District Clerk
Harris County
Envelope No: 29267407
By: HUTCHINSON, MIAEDA A
Filed: 11/27/2018 11:27:08 AM

CAUSE NUMBER *(FOR CLERK USE ONLY):* **2018-84364 / Court: 164**   COURT *(FOR CLERK USE ONLY):*

STYLED NEXT FINANCIAL GROUP, INC.. V. THE OHIO NATIONAL LIFE INSURANCE COMPANY;
OHIO NATIONAL LIFE ASSURANCE CORPORATION; OHIO NATIONAL EQUITIES, INC. AND
OHIO NATIONAL FINANCIAL SERVICES, INC.
*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| Name: Andrew R. Harvin<br><br>Address: 440 Louisiana #2300<br><br>City/State/Zip: Houston, TX 77002<br><br>Signature: *[signature]* | Email: aharvin@drhrlaw.com<br><br>Telephone: 713-228-5100<br><br>Fax: 713-228-6138<br><br>State Bar No: 09187900 | Plaintiff(s)/Petitioner(s):<br><br>NEXT Financial Group, Inc.<br><br>Defendant(s)/Respondent(s):<br><br>The Ohio National Life Insurance Company; Ohio National Life Assurance Corporation; Ohio National Equities, Inc. and Ohio National Financial Services, Inc.<br><br>[Attach additional page as necessary to list all parties] | ☒ Attorney for Plaintiff/Petitioner<br>☐ Pro Se Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other:<br><br>Additional Parties in Child Support Case:<br><br>Custodial Parent:<br><br>Non-Custodial Parent:<br><br>Presumed Father: |

2. Indicate case type, or identify the most important issue in the case *(select only 1):*

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☐ Consumer/DTPA<br>☒ Debt/Contract<br>☐ Fraud/Misrepresentation<br>☐ Other Debt/Contract:<br><br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☐ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract: | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional Liability:<br><br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability List Product:<br><br>☐ Other Injury or Damage: | ☐ Eminent Domain/ Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property:<br><br>**Related to Criminal Matters**<br>☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus— Pre-indictment<br>☐ Other: | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☐ With Children<br>☐ No Children<br><br>**Other Family Law**<br>☐ Enforce Foreign Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities of Minority<br>☐ Other: | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br><br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order<br><br>**Parent-Child Relationship**<br>☐ Adoption/Adoption with Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Paternity/Parentage<br>☐ Termination of Parental Rights<br>☐ Other Parent-Child: |
| **Employment** | **Other Civil** | | | |
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment: | ☐ Administrative Appeal<br>☐ Antitrust/Unfair Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other: | | |
| **Tax** | **Probate & Mental Health** | | | |
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: | | |

3. Indicate procedure or remedy, if applicable *(may select more than 1):*

Certified Document Number: 82730028 - Page 1 of 2

EXHIBIT A-2

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court | ☐ Declaratory Judgment | ☐ Prejudgment Remedy |
| ☐ Arbitration-related | ☐ Garnishment | ☐ Protective Order |
| ☐ Attachment | ☐ Interpleader | ☐ Receiver |
| ☐ Bill of Review | ☐ License | ☐ Sequestration |
| ☐ Certiorari | ☐ Mandamus | ☐ Temporary Restraining Order/Injunction |
| ☐ Class Action | ☐ Post-judgment | ☐ Turnover |

**4. Indicate damages sought (do not select if it is a family law case):**
☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☐ Over $100,000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000  *& specific performance*
☐ Over $1,000,000

Rev 2/13

Certified Document Number: 82730028 - Page 2 of 2



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   December 6, 2018

Certified Document Number:        82730028 Total Pages:  2

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

11/27/2018 11:27 AM
Chris Daniel - District Clerk Harris County
Envelope No. 29267407
By: Miaeda Hutchinson
Filed: 11/27/2018 11:27 AM

# 2018-84364 / Court: 164

## CAUSE NO. _____

| | | |
|---|---|---|
| **NEXT FINANCIAL GROUP, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **THE OHIO NATIONAL LIFE** | § | |
| **INSURANCE COMPANY;** | § | **HARRIS COUNTY, TEXAS** |
| **OHIO NATIONAL LIFE** | § | |
| **ASSURANCE CORPPORATION;** | § | |
| **OHIO NATIONAL EQUITIES,** | § | |
| **INC. and OHIO NATIONAL** | § | |
| **FINANCIAL SERVICES, INC.** | § | |
| | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE COURT:

NEXT Financial Group, Inc. ("NEXT") files this Original Petition complaining of Defendants The Ohio National Life Insurance Company, Ohio National Life Assurance Corporation, and Ohio National Equities, Inc., (collectively "Ohio National") and Ohio National Financial Services, Inc. ("ONFS") and in support thereof would respectfully show the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

Plaintiff's intends to conduct discovery under Level 2 of TEX. R. CIV. P. 90.3.

Certified Document Number: 82730022 - Page 1 of 13

EXHIBIT A-3

## II.
### PARTIES

1.     Plaintiff NEXT Financial Group, Inc. is a registered broker dealer, incorporated in Virginia, with its principal place of business in Houston, Harris County, Texas.

2.     Defendant The Ohio National Life Insurance Company is a corporation organized under the laws of Ohio, with its principal place of business at One Financial Way, Cincinnati, Ohio 45242. It may be served with process through its registered agent, Corporation Service Company, 211 E. 7th St., Suite 620, Austin, Texas 78701-3218.

3.     Defendant Ohio National Life Assurance Corporation is a corporation organized under the laws of Ohio with its principal place of business at One Financial Way, Cincinnati, Ohio 45242. It may be served with process with its registered agent Corporation Service Company, 211 E. 7th St., Suite 620, Austin, Texas 78701-3218.

4.     Defendant Ohio National Equities, Inc. is a corporation organized under the laws of Ohio with its principal place of business in Cincinnati, Ohio 45242. Ohio National Equities is an independent broker-dealer, which has done business in this state *inter alia* by contracting with NEXT, a Texas resident, pursuant to the Selling Agreement which is the subject of this suit and is performed in whole or in part in this state. Ohio National Equities, Inc. has not designated a registered agent for service in this state. Accordingly, it may be served with process through the Secretary of State pursuant to TEX. CIV. PRAC. & REM. CODE §17.044 at Service of Process, Texas Secretary of State, P. O. Box 12079, Austin, Texas 78711-2079. Secretary of State may forward the duplicate copy of process

2

Certified Document Number: 82730022 - Page 2 of 13

to the home office of Ohio National Equities, Inc. at 237 William Howard Taft Road, Cincinnati, Ohio 45219 by certified mail, return receipt requested, or registered mail.

5.  Defendant Ohio National Financial Services, Inc. ("ONFS") is a corporation organized under the laws of Ohio with its principal place of business in Cincinnati, Ohio 45242. It is the sole parent of the Ohio National Life Insurance Company, has conducted business in Texas, and has committed a tort in whole or in part in this state, as described in paragraphs 13, 18 and 28 of this Original Petition. Accordingly, it may be served with process through the Secretary of State pursuant to TEX. CIV. PRAC. & REM. CODE §17.044 at Service of Process, Texas Secretary of State, P. O. Box 12079, Austin, Texas 78711-2079. A duplicate copy of the process may be sent by the Secretary of State to the home office of Ohio National Financial Services, Inc. at One Financial Way, Cincinnati, Ohio 45242, by certified mail, return receipt requested, or registered mail.

### III.
### JURISDICTION AND VENUE

6.  This Court has jurisdiction over this action because all parties have conducted business in Harris County, Texas and the amount in controversy is within the jurisdictional limits of this court.

7.  Venue is proper in Harris County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE §15.001 *et seq.* because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred and is the county in which Plaintiff resided when the causes of action accrued.

3

## IV.
## FACTUAL BACKGROUND

8.      In 2001, Ohio National and Plaintiff NEXT entered into a Selling Agreement, pursuant to which NEXT *inter alia* agreed to sell Ohio National's variable annuity contracts through NEXT's representative sales agents, with commissions to be paid under a Schedule of Commissions. True and correct copies of the relevant portions of the Selling Agreement and Schedule of Commissions ("Commission Schedule") are attached hereto as Exhibits A and B.

9.      Pursuant to the Selling Agreement, NEXT's representatives have taken applications for, recommended, and sold hundreds of variable insurance policies and variable annuity contracts issued by the Ohio National Life Insurance Company and its subsidiary, Ohio National Life Assurance Corporation, to customers for more than 15 years.

10.     The Selling Agreement provides that Ohio National will compensate Plaintiff NEXT and its representatives for their services rendered as follows:

9.      COMMISSION PAYABLE

"Commissions payable in connection with the contract shall be paid to [NEXT], or its affiliated insurance agency, according to the Commission Schedule(s) relating to this Agreement as they may be amended from time to time and in effect at the time the contract payments are received by [Ohio National].

                          . . .

The terms of compensation shall survive this Agreement unless the Agreement is terminated for cause by [Ohio National] provided that [NEXT] remains a broker-dealer in good standing with the NASD and other state and federal regulatory agencies and that [NEXT] remains the broker-dealer of record for the account."

4

By its terms, the Selling Agreement cannot be amended except by writing signed by all parties.

11.     The Commission Schedule attached to the Selling Agreement provides:

"Trail commissions will continue to be paid to the broker-dealer of record while the Selling Agreement remains in force <u>and will be paid on a particular contract until the contract is surrendered or annuitized</u>."

(Emphasis added)

12.     As the broker of record for Ohio National insurance policies and annuities, NEXT has performed its obligations under the Selling Agreement.  Among other things, NEXT has assumed the responsibility for (a) training and supervising all of its registered representatives in the offer and sale of the insurance policies and annuity contracts, (b) supervising and reviewing its representatives' use of sales literature, advertising and all other communications with the public, and (c) reviewing all sales for suitability and all applications for completeness and correctness as to form.  In addition, NEXT has expressly agreed that neither it nor its representatives will induce agents to leave Ohio National, engage in any course of conduct to systematically replace contracts issued by Ohio National or recommend or cause the surrenders of cash values of the contracts in order to purchase or exchange for insurance or annuities issued by other insurance companies unless such action is in the interest of the contract owners.  NEXT has further agreed that it would not do anything prejudicial to Ohio National's interest or the interests of its contract owners.

5

Certified Document Number: 82730022 - Page 5 of 13

13.     By letter dated September 21, 2018, Defendant ONFS, gave written notice to NEXT of the intent of Ohio National to terminate all selling agreements effective December 12, 2018, and further notified NEXT that "all individual annuity trail compensation will cease at that time" (hereinafter the "Termination Notice"), notwithstanding its prior agreement to pay trail commissions on particular contracts until the contracts are surrendered or annuitized.  A true and correct copy of the Termination Notice is attached hereto as Exhibit C.

14.     Defendants' Termination Notice, and particularly its stated intent to cease paying trail commissions on individual annuity contracts, constitutes a material breach and repudiation of the Selling Agreement.  Indeed, it is simply a scheme designed to save Defendants money, as Ohio National has chosen to cease marketing certain variable annuity contracts that it deems no longer profitable.

15.     The scheme is even more pernicious as Defendants, by withholding compensation, are attempting to induce registered representatives of NEXT and other companies to offer alternative products that may not be as favorable to, or in the best interest of, their customers.  For example, one of the contracts issued by Ohio National was a variable annuity with a guaranteed minimum income benefit rider ("GMIB Annuity Contract").  The GMIB Annuity Contract provides a guaranteed retirement income for life, regardless of the performance or value of the underlying contract investments.  Thus, even if a combination of underperforming investments, contract fees and income distributions were to cause the annuity's account value to fall to zero, Ohio National is nonetheless contractually responsible for continuing to pay a certain level of guaranteed income for the

Certified Document Number: 82730022 - Page 6 of 13

lifetime of the client. As it has concluded that such contracts are no longer profitable, Ohio National has decided to exit this market and to cease paying the trail commissions which compensate NEXT and its representatives for continuing to advise their clients and service the contracts.

16.     By shutting off trail commissions, Ohio National will pass onto NEXT the ongoing costs and risks associated with servicing those clients who choose to keep their variable contracts issued by Ohio National. Servicing a contract is complicated and requires an analysis of, among other things, the amount of withdrawals allowed per year in the contract, the timing of the withdrawals, the timing of annuitization, and the expected return per year from the annuity contract. And, deciding whether a contract should be surrendered or exchanged for another product is likewise complicated, necessarily involving a suitability analysis required by law.

17.     In an effort to circumvent its obligations, Ohio National has decided to directly solicit NEXT's clients to give up their annuity contract benefits. By letters dated on or about October 19, 2018, Defendant ONFS transmitted written offers by Ohio National to buy out the variable annuity contracts issued to NEXT's clients. (The "Buyout Offer"). A true and correct copy of one such letter is attached hereto as Exhibit D. Ohio National has offered an enhanced value, essentially a bonus, to induce clients to surrender their variable annuities with guaranteed minimum income benefits. The Buyout Offer is misleading in several ways. First, in many instances, the value enhancement is less than the guaranteed income benefits which Ohio National would have to pay to the clients over their lifetime. Second, the Buyout Offer notifies the clients to review carefully a

7

misleading prospectus supplement and advises the clients to contact their financial professional for advice. The prospectus supplement falsely provides:

> "We will not pay broker-dealers compensation if you accept the Offer. Your financial professional may receive compensation from his or her broker-dealer if you maintained your ONcore variable annuity which may provide them an incentive in recommending whether or not you should accept the offer. Contact your financial professional for information about the compensation he or she receives."

In fact, NEXT's representatives will <u>not receive any</u> compensation if clients refuse the Buyout Offer. Thus, Ohio National misleadingly attempts to induce clients to accept the Buyout Offer by falsely informing them that their advisor has a financial incentive to persuade them to keep their annuity.

18.     Moreover, without any consideration, Defendants have sought, by a second letter, dated September 21, 2018, to shift the entire risk associated with Defendants' Buyout Offer to NEXT and its financial representatives and unilaterally impose a "hold harmless and indemnity" obligation upon NEXT.

> In addition, your firm shall hold harmless and indemnify [Ohio National] for any loss or expense suffered as a result of any violation of, or non-compliance with, any applicable law or regulation, related to the servicing of the Contracts or to any information accessed or information or order entered via the Customer Information Services or any fraudulent use of the customer information services.

A true and correct copy is attached hereto as Exhibit E. In other words, if any customer brings an action related to the Buyout Offer or a decision to continue with his or her variable annuity contract, Ohio National will attempt to hold NEXT responsible for the defense and liability, if any, of the parties under this clause, without any compensation or other consideration whatsoever.

8

Certified Document Number: 82730022 - Page 8 of 13

19.     Regardless of the merits of the Buyout Offer, Ohio National expects NEXT and its representatives to advise their clients with respect to the Buyout Offer and continue to service those contracts which remain in place in future years, all without compensation. Ohio National's notice to terminate all trail commissions is a material breach and repudiation of the Selling Agreement and contravenes the representations it has made in the prospectus supplement.

## V.
### CAUSES OF ACTION

*Count 1 - Declaratory Judgment Relief*

20.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as it fully stated herein.

21.     Pursuant to TEX. R. CIV. P. §37.001 *et seq.*  Plaintiff requests that this Court construe the Selling Agreement and declare, as a matter of law, that Ohio National is obligated to pay trail commissions on all variable annuity contracts issued by Ohio National until any particular contract is surrendered or annuitized.  Further, Plaintiff requests that this Court construe the letter of September 21, 2018, referenced in paragraph 18, and declare it invalid, as a matter of law, since (i) it has not been agreed to by NEXT in writing, as required to amend the Selling Agreement and (ii) is without consideration.

22.     There is an actual and justiciable controversy between the parties with regard to this issue.

Certified Document Number: 82730022 - Page 9 of 13

*Count 2 - Breach of Contract*

23.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully stated herein.

24.     Ohio National's notice to cease paying trail commissions constitutes a material breach and repudiation of the express terms of the Selling Agreement and the duty of good faith and fair dealing implied in every contract.   Ohio National's breach and repudiation of the Selling Agreement irreparably harms Plaintiff and its registered representatives who are expected to continue to service contracts issued by Ohio National without compensation due under the Selling Agreement.   Accordingly, Plaintiff is entitled to specific performance of the terms of the Selling Agreement, requiring Ohio National to pay trail commissions on all variable annuity contracts, on which NEXT's representatives are of record, until such contracts are surrendered or annuitized.   Ohio National has the present ability to perform…it just won't.   Indeed, Ohio National has been performing, and represents that it will continue to provide customer service to clients under those annuity contracts which are not surrendered.

25.     Plaintiff has no adequate remedy of law inasmuch as damages cannot be calculated with any reasonable certainty at the present time and is dependent upon circumstances beyond the control of NEXT, including but not limited to, the duration of each customer's life and annuity contract, the number and amount of withdrawals made by each customer and the timing thereof, as well as the timing of each customer's decision, if any, to annuitize and the corresponding contract value as of the date of annuitization.

Certified Document Number: 82730022 - Page 10 of 13

26.     In addition, NEXT will have incurred actual damages in the amount of the trailing commissions which will have been earned, yet not paid by Ohio National, as of the time of trial.  That amount will likely be in excess of $200,000.  Alternatively, in the event that specific performance is not available in equity, NEXT requests that it recover its full damages, in excess of $1 million.

*Count 3 - Tortious Interference with Contract*

27.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained the preceding paragraphs as if fully stated herein.

28.     Defendants have tortiuously interfered with the relationships between NEXT and its clients who have purchased variable annuity contracts.  Specifically, their notice to cease paying trail commissions irreparably harms NEXT and its representatives, depriving them of compensation owed for servicing their clients' contracts.  Moreover, Defendants' transmission of the Buyout Offer is intended to induce clients to cancel their variable annuity contracts and all attached riders with the purpose of benefiting Defendants rather than serving the best interests of many of NEXT's clients.  This irreparably injures NEXT and its representatives, leaving them with the obligation to service contracts without just compensation.

*Conditions Precedent*

29.     All conditions precedent to the relief sought herein have been met.

*Attorney's Fees*

30.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully stated herein.

11

31.     Plaintiff sues Defendants for reasonable and necessary attorneys' fees incurred (i) pursuant to TEX. CIV. P. & REM. CODE §37.009 and 38.001 *et seq.*, and for all costs, and (ii) as a result of its unilateral decision in bad faith to breach and repudiate the Selling Agreement.

## VI.
### REQUEST FOR DISCLOSURE

Defendants are hereby requested to disclose, within fifty (50) days of service of this request, the information or material described in TEX. R. CIV. P. 194.2(a-I).

## VII.
### JURY DEMAND

Plaintiff demands a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff NEXT Financial Group, Inc. prays that upon hearing and final trial, it recover all of the relief requested, both equitable and legal, including but not limited to, judgment against Ohio National declaring the rights and obligations of the parties under the Selling Agreement, the Termination Notice and letter of September 21, 2018 (referenced in paragraph 18), and for an award of specific performance of the Selling Agreement as requested herein, for its actual damages against Ohio National and ONFS and for reasonable and necessary attorneys' fees, costs of court and prejudgment and post judgment interest against all Defendants, and for such other and further relief, both general and special, to which Plaintiff may be justly entitled.

Respectfully submitted,

**DOYLE RESTREPO HARVIN & ROBBINS, L.L.P.**

By: */s/ Andrew R. Harvin*
Andrew R. Harvin
State Bar No. 09187900
aharvin@drhrlaw.com
The Lyric Centre
440 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 228-5100 (telephone)
(713) 228-6138 (facsimile)

*ATTORNEYS FOR PLAINTIFF*
*NEXT FINANCIAL GROUP, INC.*



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   December 6, 2018

Certified Document Number:        82730022 Total Pages:  13

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

2018 SELLING AGREEMENT: 164

Agreement, made this _____7_____ date of December_____, 2001 by and between The Ohio National Life Insurance Company ("ONL"), an Ohio Corporation; Ohio National Life Assurance Corporation, an Ohio corporation; Ohio National Equities, Inc. ("ONEQ"), an Ohio Corporation, and NEXT Financial Group, Inc. ("BD"), a Virginia Corporation.

Whereas, The Ohio National Life Insurance Company and its subsidiary, Ohio National Life Assurance Corporation (collectively referred to as "ONL"), issue certain variable insurance contracts/policies ("Contracts") described in this Agreement, which are deemed securities under the Securities Act of 1933 ("1933 Act"); and

Whereas, ONEQ is duly licensed as a Broker/Dealer with the National Association of Securities Dealers, Inc. ("NASD") and the Securities and Exchange Commission ("SEC"); and

Whereas, ONL has appointed ONEQ as the Underwriter of the Contracts; and

Whereas, ONL and ONEQ propose to have BD's representatives ("Representatives") who are, or will become, duly licensed insurance agents solicit sales of the Contracts; and

Whereas, ONEQ delegates to BD, to the extent legally permitted, training and certain administrative responsibilities and duties in connection with sales of the Contracts;

NOW THEREFORE, in consideration of the premises and mutual promises contained herein, the parties hereto agree as follows:

**1.   APPOINTMENT**

ONL and ONEQ hereby appoint BD to supervise solicitations of the Contracts, and to facilitate solicitations of sales of the Contracts which are described in the Schedule(s) of Commissions attached hereto.

**2.   REPRESENTATIONS**

a.   ONL, ONEQ and BD each represents to the others that it and the below signed officers have full power and authority to enter into this Agreement.

b.   ONEQ represents to BD that it is registered as a Broker/Dealer under the Securities Exchange Act of 1934 ("1934 Act") and under the Blue Sky Laws of each jurisdiction in which such registration is required for the sale of the Contracts and that ONEQ is a member of the NASD.

c.   BD represents to ONEQ that it is registered as a Broker/Dealer under the 1934 Act and under the Blue Sky Laws of each jurisdiction in which such registration is

required for the sale of the Contracts, and that the BD is a member of the NASD.

d.   ONL represents to BD that the Contracts, including related separate accounts, shall comply with the registration and all other applicable requirements of the 1933 Act and the Investment Company Act of 1940, and the rules and regulations thereunder, including the terms of any order of the SEC with respect thereto.

e.   ONL represents to BD that the Contracts it issues have been duly filed and approved by the state insurance departments in such jurisdictions where it is authorized to transact business, unless otherwise indicated in the Schedule of Commissions.

f.   ONL represents to BD that the Contract prospectuses included in ONL's Registration Statement and in post-effective amendments thereto, and any supplements thereto, as filed or to be filed with the SEC, as of their respective dates, contain or will contain, all statements and information which are required to be stated therein by the 1933 Act and in all respects conform or will conform, to the requirements thereof.

**3.   COMPLIANCE WITH NASD CONDUCT RULES AND FEDERAL AND STATE SECURITIES AND STATE INSURANCE LAWS**

BD agrees to abide by all rules and regulations of the NASD, including its Conduct Rules, and to comply with all applicable state and federal laws and the rules and regulations of authorized regulatory agencies affecting the sale of the Contracts.

**4.   LICENSING AND/OR APPOINTMENT OF REPRESENTATIVES**

BD certifies that any Representative who requests appointment from ONL has not been convicted of a felony or a misdemeanor involving fraud or dishonesty. BD shall assist ONL and ONEQ in the licensing and/or appointment of Representatives under applicable insurance laws to sell the Contracts (see attached General Letter of recommendation). BD understands that ONL reserves the right to refuse to appoint any Representative or, once appointed, to thereafter terminate the same. BD shall notify ONEQ if any Representative ceases to be a registered representative of BD,

Certified Document Number: 82730023 - Page 1 of 6

**EXHIBIT A**

or if any Representative becomes the subject of adverse action (e.g., an amended U-4).

### 5.  SUPERVISION OF REPRESENTATIVES

BD shall have full responsibility for training and supervision of all Representatives associated with BD who are engaged directly or indirectly in the offer or sale of the Contracts and all such persons shall be subject to the control of BD with respect to such persons' activities in connection with the sale of the Contracts.  BD shall comply with the administrative procedures of ONL and ONEQ involving state and federal securities law and state insurance law.

Before Representatives engage in the solicitation of applications for the Contracts, BD will cause: (1) the Representatives to be registered representatives of BD; (2) the Representatives to qualify under applicable federal and state laws to engage in the sale of the Contracts; (3) the Representatives to be trained in the sale of the Contracts; and (4) the Representatives to limit solicitations for the Contracts to jurisdictions where ONL has authorized such solicitation.

BD is specifically charged with the responsibility of supervising and reviewing its Representatives' use of sales literature and advertising and all other communications with the public in connection with the Contracts.  No sales solicitation, including the delivery of supplemental sales literature or other such materials, shall occur, be delivered to, or used with a prospective purchaser unless accompanied or preceded by appropriate then current prospectus(es).

In the event a Representative fails to meet the BD's rules and standards with respect to the solicitation of Contracts, BD shall act to terminate the sales activities of such Representative relating to the Contracts.

### 6.  SALES PROMOTION MATERIAL AND ADVERTISING

No sales promotion materials or advertising relating to the Contracts shall be used by BD unless the specific items have been approved in writing by ONL.

### 7.  SECURING APPLICATIONS

All applications for Contracts shall be made on application forms supplied by ONL.  BD will review all sales for suitability and all applications for completeness and correctness as to form.  BD will promptly, but in no case later than the end of the next business day following receipt by BD, forward to ONL all complete and correct applications for suitable transactions, together with any payments received with the applications. ONL reserves the right to reject any Contract application and return any payment made in connection with

an application which is rejected.  Contracts issued on accepted applications will be forwarded to BD or its Representatives for delivery to the Contract Owner within five (5) days after the date of issue, unless otherwise agreed by the parties hereto.

### 8.  PAYMENTS RECEIVED BY BD

All premium payments (hereinafter collectively referred to as "Payments") are the property of ONL and shall be transmitted to ONL by BD immediately in accordance with the administrative procedures of ONL without any deduction or offset for any reason, unless otherwise agreed by the parties hereto.  CUSTOMER PREMIUM CHECKS SHALL BE MADE PAYABLE TO THE ORDER OF "THE OHIO NATIONAL LIFE INSURANCE COMPANY."

### 9.  COMMISSIONS PAYABLE

Commissions payable in connection with the contracts shall be paid to BD, or its affiliated insurance agency, according to the Commission Schedule(s) relating to this Agreement as they may be amended from time to time and in effect at the time the Contract Payments are received by ONL.  ONL reserves the right to: revise the Commission Schedules at any time upon at least thirty (30) days prior written notice to BD;.  ONL also reserves the right to adjust the compensation payable on sales of ONL products that replace existing ONL contracts; and offset future compensation payable to BD against any compensation to be returned to ONL by BD.  Compensation to the BD's Representatives for Contracts solicited by the Representatives and issued by ONL will be governed by agreement between BD and its Representatives and its payment will be the BD's responsibility.   In those states where express assignment of commissions is required, BD hereby assigns its representatives' commissions to its affiliated insurance agency for those states.

BD will not pay any compensation to an agent licensed pursuant to this Agreement until such agent is authorized to receive such compensation under applicable state law.

The terms of compensation shall survive this Agreement unless the Agreement is terminated for cause by ONL, provided that BD remains a broker-dealer in good standing with the NASD and other state and federal regulatory agencies and that BD remains the broker-dealer of record for the account.

### 10.  CANCELLATION OF POLICY

If ONL refunds premiums or returns contract values and waives surrender charges on any Contract for any reason, then no commission will be payable with respect to said premiums and any commission previously paid for said premiums shall be refunded to ONEQ. However, ONL will not refund premiums or return contract values and waive surrender

Certified Document Number: 87230023 - Page 2 of 6

2

charges to satisfy customer complaints without prior notification to BD

ONEQ agrees to notify BD within thirty (30) days after it receives notice from ONL of any premium refund or a commission chargeback.

## 11. ADDITIONAL PARTY TO THIS AGREEMENT

In the event that BD is not licensed as an insurance agency in any state where it wishes to solicit contracts, but utilizes an affiliated entity to satisfy state insurance laws, such affiliated entity shall sign this Agreement and BD shall countersign this Agreement, and BD and its affiliated entity shall be duly bound thereby. All references to BD in this Agreement shall include any affiliated insurance entity.

## 12. HOLD HARMLESS AND INDEMNIFICATION PROVISIONS

No party to this Agreement will be liable for any obligation, act or omission of the other. Each party to this Agreement will hold harmless and indemnify ONL, ONEQ, and BD as appropriate, for any loss or expense suffered as a result of the actual or alleged violation of, or noncompliance with, any applicable law or regulation by a party or by an Associated Person of that party. The term "Associated Person" as used herein shall be defined consistently with the definition of such term as contained in Article I of the NASD By-laws.

## 13. NON-ASSIGNABILITY PROVISION

This Agreement may not be assigned by any party except by mutual consent.

## 14. NON-WAIVER PROVISION

Failure of any party to terminate the Agreement for any of the causes set forth in this Agreement will not constitute a waiver of the right to terminate this Agreement at a later time for any of these causes.

## 15. AMENDMENTS

Except as stated in Paragraph 9, no amendment to this Agreement will be effective unless it is in writing and signed by all the parties hereto.

## 16. INDEPENDENT CONTRACTORS

BD and its Representatives are independent contractors with respect to ONL and ONEQ.

## 17. NOTIFICATION OF DISCIPLINARY PROCEEDINGS

BD agrees to notify ONEQ in a timely fashion of any disciplinary proceedings against any of BD's Representatives arising from the solicitation of sales of the Contracts or any threatened or filed arbitration action or civil litigation arising out of BD's solicitation of the Contracts.

## 18. BOOKS AND RECORDS

ONL, ONEQ and BD agree to maintain their books, accounts and records so as to clearly and accurately disclose the nature and details of transactions and to assist each other in the timely preparation of records. ONEQ and BD shall each submit such records to the regulatory and administrative bodies which have jurisdiction over ONL or the underlying mutual fund shares.

Each party to this Agreement shall promptly furnish to the other party any reports and information which the other party may reasonably request for the purpose of meeting its reporting and recordkeeping requirements under the insurance laws of any state, and under federal and state securities laws or the rules of the NASD.

## 19. LIMITATIONS

No party other than ONL shall have the authority on behalf of ONL to make, alter, or discharge any Contract issued by ONL, to waive any forfeiture or to grant, permit, or extend the time of making any Payments, or to alter the forms which ONL may prescribe, or to substitute other forms in place of those prescribed by ONL; or to enter into any proceeding in a court of law or before a regulatory agency in the name of or on behalf of ONL.

## 20. TERMINATION

This Agreement may be terminated at the option of any party upon sixty (60) days written notice to the other parties, or without notice at the option of any party hereto upon a material breach by any party of the covenants and terms of this Agreement.

## 21. NOTICE

All notices to ONL and ONEQ relating to this Agreement should be sent to One Financial Way, Cincinnati, Ohio 45242, ATTN: Legal Department. All notices to BD will be duly given if mailed to the address shown above.

## 22. GOVERNING LAW/ SEVERABILITY

This agreement will be construed in accordance with the laws of the State of Ohio. Should any provision of this Agreement be held unenforceable, those provisions not affected by the determination of unenforceability shall remain in full force and effect.

Certified Document Number: 82730023 - Page 3 of 6

3

## 23. GENERAL CONDUCT OF BD

BD expressly agrees that neither it nor its Representatives will:
induce agents to leave ONL; engage in any course of conduct
to systematically replace Contracts issued by ONL;
or recommend or cause the surrenders of cash values of the
Contracts to purchase or exchange for insurance policies or
annuities issued by other insurance companies, unless such
action is in the best interests of the Contract Owner; or
otherwise do anything prejudicial to ONL's interests

or do anything prejudicial to ONL's interests or that of its
Contract Owners.  This provision will continue in force after
the termination of this Agreement.

## 24. CUSTOMER COMPLAINTS

In the event a complaint is received by ONL or ONEQ from a
customer, ONL or ONEQ will advise BD as soon as possible

of the existence and nature of the complaint. BD shall have a
reasonable amount of time, not to exceed ten (10) days unless
otherwise agreed to by the Parties, to resolve the complaint.

In the event the complaint is not resolved, ONL may, in its
sole discretion, refund premiums or return contract values and
waive surrender charges or otherwise act to resolve the
customer's complaint.

In the event a complaint is made by a customer or to a state or
federal regulatory agency or filed with an appropriate self-
regulatory organization, BD shall fully cooperate with ONL in
responding to the complaint, including providing all
documents and records reasonably requested by ONL.

## 25.   REQUIRED ELEMENTS OF THIS AGREEMENT

This agreement is not complete unless it includes a
Commission Schedule, and the General Letter of
Recommendation, both of which are incorporated herein by
reference.

4

**THE OHIO NATIONAL LIFE INSURANCE COMPANY**

**OHIO NATIONAL LIFE ASSURANCE CORPORATION**

BY: _Thomas Q. Barfield_

Title: _SENIOR VP_

**OHIO NATIONAL EQUITIES, INC.**

BY: _Thomas Q. Barfield_

Title: _SENIOR VP_

**BROKER DEALER**

_46214_  REDACTION
Firm CRD #      Tax ID Number

_NEXT Financial Group, Inc._
(Name)

_2500 Wilcrest, Ste 620_
(Street Address)

_Houston, TX 77042_
(City, State, Zip)

BY: _Karen Eyster_

Title: _VP/CCO_

**BROKER-DEALER INSURANCE AFFILIATE**

BY: _____

Title: _____

Form 8507A

Certified Document Number: 82730023 - Page 5 of 6

5

## GENERAL LETTER OF RECOMMENDATION

The undersigned broker-dealer, on behalf of itself and its insurance affiliate, if any, certifies to the following in conjunction with the submission of licensing/appointment papers for any applicant as agent of The Ohio National Life Insurance Company or Ohio National Life Assurance Corporation ("ONL"), and broker-dealer will, upon request, forward proof of compliance with same to ONL in a timely manner.

1.      We have made a thorough and diligent inquiry and investigation into the character and background of this applicant, as well as identity, residence, personal history, and experience and instruction, and are satisfied that the applicant is of good moral character, financially responsible, trustworthy and qualified to act as your agent.

2.      We have on file a current U-4 form which was completed by the applicant, and we have fulfilled all the necessary investigative requirements for the registration of the applicant as a registered representative of our NASD member firm. The applicant is presently registered as an NASD registered representative.

3.      We certify that the applicant meets all state-specific requirements for the states in which the applicant wishes to be appointed, including all educational requirements, and that we have obtained all necessary information about the applicant (including, where applicable, current credit reports).

4.      We hereby warrant that the applicant is not applying for a license with ONL The Ohio National Life Insurance Company in order to place insurance chiefly and solely on his life, or lives of his relatives or associates.

5.      In states where insurance agents may not solicit business for an insurance company until they are appointed with that company, we will not permit any applicant to transact insurance as an agent of ONL until duly licensed or appointed by ONL. No applicant in any of those restricted states has been permitted to write, solicit business, or act as an agent in any capacity, and they will not be so permitted until the certificate of authority or license applied for is received.

BROKER-DEALER

By: _Karen Eystin_

Its: _VP/CCO_

Certified Document Number: 82730023 - Page 6 of 6

**8507B**



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   December 6, 2018

Certified Document Number:        82730023 Total Pages:  6

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

2018-84364 / Court: 164

## SCHEDULE OF COMMISSIONS

**ONcore Premier FPDA**

| | Option 1 | Option 2 | Option 3 | Option 4 | Option 5 |
|---|---|---|---|---|---|
| Initial Premium | 6.00% | 5.00% | 1.00% | 7.00% | 3.00% |
| Add-on premiums | 6.00% | 5.00% | 1.00% | 7.00% | 3.00% |
| Trails* | | | | | |
| Deposit Yrs 2-6 | 0.00% | 0.25% | 1.00% | 0.00% | 0.80% |
| Deposit Yrs 7 + | 1.00% | 1.00% | 1.00% | 0.00% | 0.80% |

**Commissions for purchasers age 81 and over (Options 1,4 and 5 only):**

| | Option 1 | Option 4 | Option 5 |
|---|---|---|---|
| Initial Premium | 3.00% | 3.50% | 1.50% |
| Add-on premiums | 3.00% | 3.50% | 1.50% |
| Trails* | | | |
| Deposit Yrs 2-6 | 0.00% | 0.00% | 0.40% |
| Deposit Yrs 7 + | 1.00% | 0.00% | 0.40% |

You must select either A** or B:

**A: Firm allows Registered Representative to choose from the following options:**

| Option 1 | Option 2 | Option 3 | Option 4 | Option 5 |
|---|---|---|---|---|
| ✓ | ✓ | ✓ | ✓ | ✓ |

**If A is selected, part 2 must be completed.

**A2: If individual broker fails to select option, default will be:**

| Option 1 | Option 2 | Option 3 | Option 4 | Option 5 |
|---|---|---|---|---|
| | ✓ | | | |

**B: Firm chooses one option for all business:**

| Option 1 | Option 2 | Option 3 | Option 4 | Option 5 |
|---|---|---|---|---|
| | | | | |

No commission chargeback will occur at death of annuitant.  Annuitant must be living at time of policy delivery.  There will be 100% chargeback if the policy is not taken during the free look period.  After the free look period, there will be no chargeback.

A chargeback of 1% will apply to contracts surrendered in years one and two if option 4 was chosen.

We reserve the right to adjust commissions on policies annuitized during the first contract year.

*Trail commissions will be paid on the quarterly anniversary, starting in the 15th month and will be calculated using the asset value on the anniversary less premium payments received in the last 12 months.

Trail commissions will continue to be paid to the broker dealer of record while the Selling Agreement remains in force and will be paid on a particular contract until the contract is surrendered or annuitized.

**FORM 8507C.1**

**EXHIBIT B**

Certified Document Number: 82730024 - Page 1 of 3

**SCHEDULE OF COMMISSIONS**

**ONcore Value FPDA**

|  | Option 1 | Option 2 | Option 3 |
|---|---|---|---|
| Initial Premium | 5.00% | 4.00% | 0.70% |
| Add-on premiums | 5.00% | 4.00% | 0.70% |
| Trails* | | | |
| Deposit Yrs 2-6 | 0.00% | 0.00% | 0.70% |
| Deposit Yrs 7 + | 0.00% | 0.50% | 0.70% |

**Commissions for purchasers age 81 and over (Option 1 only)**

| Initial Premium | 2.50% |
|---|---|
| Add-on premiums | 2.50% |
| Trails* | |
| Deposit Yrs 2-6 | 0.00% |
| Deposit Yrs 7 + | 0.50% |

No commission chargeback will occur at death of annuitant.
There will be a 100% chargeback if the policy is not taken during
the free look period.
We reserve the right to adjust commissions on policies annuitized
during the first contract year.

**You must select either A** or B:**

| A: Firm allows Registered Representative to choose from the following options: | | |
|---|---|---|
| Option 1 | Option 2 | Option 3 |
| ✓ | ✓ | ✓ |

**If A is selected, part 2 must be completed.

| A2: If individual broker fails to select option, default will be: | | |
|---|---|---|
| Option 1 | Option 2 | Option 3 |
| | ✓ | |

| B: Firm chooses one option for all business: | | |
|---|---|---|
| Option 1 | Option 2 | Option 3 |
| | | |

**ONcore Flex FPDA**

| Initial Premium | 1.00% |
|---|---|
| Add-on premiums | 1.00% |
| Trails* | |
| Deposit Yrs 2 + | 1.00% |

**COMMISSIONS FOR PURCHASERS AGE 81 AND OVER:**

| Initial Premium | 0.85% |
|---|---|
| Add-on premiums | 0.85% |
| Trails* | |
| Deposit Yrs 2 + | 0.85% |

No commission chargeback will occur at death of annuitant.  Annuitant must be living at time of policy delivery.
There will be a 100% chargeback if the policy is not taken during the free look period.
After the free look period, there will be a 100% chargeback if the contract is surrendered
during the first six 6 months following the issuance of the contract, and a 50%
chargeback if it is surrendered during months 7 through 12 of the first contract year.
There will be a 100% chargeback on any partial withdrawals exceeding 10% of the initial
premium in the first 6 months, and 50% chargeback on any partial withdrawals
exceeding 10% of the initial premium during months 7 through 12 of the first contract year.
Trail commissions, will be paid on the quarterly anniversary,
starting in the 15th month and will be calculated using the
asset value on the anniversary less premium payments received
in the last 12 months.
Trail commissions will continue to be paid to broker dealer of record
while the Selling Agreement remains in force and will be paid on
a particular contract until the contract is surrendered or annuitized.
We reserve the right to adjust commissions on policies annuitized
during the first contract year.

FORM 8507C.2

Certified Document Number: 82790024 - Page 2 of 3

## SCHEDULE OF COMMISSIONS

**ONcore Xtra FPDA**

| | Option 1 | Option 2 |
|---|---|---|
| Initial Premium | 5.00% | 4.00% |
| Add-on premiums | 5.00% | 4.00% |
| Trails*<br>  Deposit Yrs 2 + | 0.00% | 0.25% |

No commission chargeback will occur at death of annuitant.
Annuitant must be living at time of policy delivery.
There will be a 100% chargeback if the policy is not taken during
    the free look period.
*Trail commissions, will be paid on the quarterly anniversary,
    starting in the 15th month and will be calculated using the
    asset value on the anniversary less premium payments received
    in the last 12 months.
Trail commissions will continue to be paid to broker dealer of record
    while the Selling Agreement remains in force and will be paid on
    a particular contract until the contract is surrendered or annuitized.
We reserve the right to adjust commissions on policies annuitized
    during the first contract year.

**You must select either A\*\* or B:**

| A: Firm allows Registered<br>Representative to choose<br>from the following options: | |
|---|---|
| Option 1 | Option 2 |
|  | ✓ |

\*\*If A is selected, part 2 must be completed.

| A2: If individual broker fails<br>to select option, default will be: | |
|---|---|
| Option 1 | Option 2 |
|  | ✓ |

| B: Firm chooses one option<br>for all business: | |
|---|---|
| Option 1 | Option 2 |
|  |  |

**ONcore Lite FPDA**

| Initial Premium | 4.50% |
|---|---|
| Add-on premiums | 4.50% |
| Trails*<br>  Deposit Yrs 4+ | 1.00% |

**COMMISSIONS FOR PURCHASERS AGE 81 AND OVER:**

| Initial Premium | 2.25% |
|---|---|
| Add-on premiums | 2.25% |
| Trails*<br>  Deposit Yrs 4+ | 1.00% |

No commission chargeback will occur at death of annuitant.  Annuitant must be living at time of policy delivery.
There will be a 100% chargeback if the policy is not taken during
    the free look period.
*Trail commissions, will be paid on the quarterly anniversary,
    starting in the 39th month and will be calculated using the
    asset value on the anniversary less premium payments received
    in the last 12 months.
Trail commissions will continue to be paid to broker dealer of record
    while the Selling Agreement remains in force and will be paid on
    a particular contract until the contract is surrendered or annuitized.
We reserve the right to adjust commissions on policies annuitized
    during the first contract year.

**FORM 8507C.3**

Certified Document Number: 82730024 - Page 3 of 4



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   December 6, 2018

Certified Document Number:        82730024 Total Pages:  3

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

**2018-84364 / Court: 164**

One Financial Way
Cincinnati, Ohio 45242

Post Office Box 237
Cincinnati, Ohio 45201-0237
513.794.6100
ohionational.com


Ohio National
Financial Services.

September 21, 2018

Next Financial Group Inc
Attn: Legal Department
2500 Wilcrest Ste 620
Houston, TX  77042

RE:    **Selling Agreement**

To Whom It May Concern:

This letter is to provide notice of termination of any and all selling agreements, as amended, by and between you and any of your affiliates and The Ohio National Life Insurance Company, Ohio National Life Assurance Corporation and Ohio National Equities, Inc.  Termination will be effective December 12, 2018.   Pursuant to the agreement, all individual annuity trail compensation will cease at that time.  All group variable annuity trail compensation and life insurance renewal commissions will continue to be paid per the terms of the selling agreement.

You will be receiving information shortly about the terms for servicing your clients after termination of the selling agreement(s).

If you have any questions, please direct them to legal@ohionational.com.

Sincerely,

William C. Price
Senior Vice President & Assistant General Counsel

Certified Document Number: 82730025 - Page 1 of 1

**EXHIBIT C**



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   December 6, 2018

Certified Document Number:        82730025 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

 Ohio National
Financial Services ®

2018-84364 / Court: 164

One Financial Way
Cincinnati, Ohio 45242

Post Office Box 237
Cincinnati, Ohio 45201-0237
Telephone: 833.810.4642
www.ohionational.com

October 19, 2018

# REDACTION

Registered Rep.
 REDACTION

NEXT FINCL GRP INC

RE: Contract Number REDACTION

Dear REDACTION

You worked with your financial professional to develop a plan that helped prepare you for retirement, and you included an ONcore variable annuity with an optional Guaranteed Minimum Income Benefit (GMIB) rider as a part of that plan.

However, Ohio National recognizes that life changes, and since purchasing your variable annuity, your retirement goals might have changed. This may include the flexibility of having more assets to address an immediate need or to reinvest these assets in another financial product better suited to address your new goals.

**Understanding this Buyout Offer**
Ohio National is pleased to offer you an opportunity to enhance your financial assets in return for your agreement to cancel your ONcore variable annuity contract and guaranteed benefits. Deciding whether to accept this offer is an important decision. You may wish to work with a trusted financial professional to evaluate your retirement plan and retirement income needs to determine if this offer is right for you.

By accepting this offer, your variable annuity's Contract Value will be enhanced by an amount equal to the greater of:

1. An Enhancement Amount equal to 50% (the "Enhancement Percentage") of the Enhancement Base, which is defined as your Contract Value subtracted from the value of your GMIB rider's Guaranteed Earnings Income Base (GEIB), up to a maximum of 20% of the GEIB value; or

2. A Minimum Enhancement Amount equal to 7.5% (the "Minimum Enhancement Percentage") of your Contract Value

You may then receive the Enhanced Contract Value as a cash surrender or transfer it to a financial product available from another financial institution. In addition, we'll waive any and all charges associated with surrender if you accept the Buyout Offer.

(continued)

**EXHIBIT D**

The Ohio National Life Insurance Company | Ohio National Life Assurance Company

**Contract and rider values**
As of the date of this letter, your Contract Value, GEIB value and enhanced values are as follows:

Enhancement Amount Calculation

| Step 1. |
| --- |
| $724,272.30 - $581,031.32 = $143,240.98 |
| GEIB Value – Contract Value = Enhancement Base |

Step 2.

$143,240.98 x 50% = $71,620.49
Enhancement Base x Enhancement Percentage = Enhancement Amount*
*The Enhancement Amount cannot exceed 20% of the GEIB Value.

Minimum Enhancement Amount Calculation

| Step 1. |
| --- |
| $581,031.32 x 7.5% = $43,577.35 |
| Contract Value x Minimum Enhancement Percentage = Minimum Enhancement Amount |

If you accept this offer, the greater of the two enhancement values above ($71,620.49 and $43,577.35) will be added to your Contract Value as of the date all requirements are received in good order.

**As a result, your Enhanced Contract Value as of the date of this letter would be $652,651.81.**

Your Contract Value and GEIB value may change between the date of this letter and the date any requirements are received in good order. As a result, your Enhancement Amount, Minimum Enhancement Amount and Enhanced Contract Value may vary from what is shown in this offer letter. To learn your current values as of a specific date, we encourage you to contact Ohio National's Annuity Product Specialists at **833.810.4642.**

**Factors to consider**
Before accepting the Buyout Offer, it is important to consider your current and future income and accumulation needs, as well as any other features or optional riders associated with your variable annuity contract. This buyout opportunity is an optional offer that may not be appropriate for all individuals, and you may wish to discuss your retirement plans with a financial professional prior to making a decision.

If you decline the offer, your existing variable annuity contract and riders will continue to provide the same benefits they do today. However, please note that if you elect to accept the offer, your GMIB rider, existing variable annuity contract and any other riders or features attached to it, including death benefits, will terminate, and cannot be reinstated.

(continued)

We believe this offer can be mutually beneficial to Ohio National and certain clients. Please refer to the enclosed **GMIB Buyout Offer** brochure for additional information and a more detailed explanation of the offer.

**Information to review**
Deciding whether to accept this offer is an important decision. Please carefully review the following:

- Your prospectus and the prospectus supplement included in this mailing

- Your existing contract and any endorsements added to it

- The offer letter and summary of values

- The enclosed GMIB Buyout Offer brochure

- GMIB Buyout Offer Acceptance form

Please note that **you may only accept the offer between November 12, 2018 and February 11, 2019**. However, we may choose to end the offer period sooner, in which case you will be notified.

The enclosed GMIB Buyout Offer Acceptance form must be signed and received in good order during the period shown above. A return envelope is enclosed for your convenience. If you choose to transfer your Enhanced Contract Value to another financial institution, any additional paperwork required by your chosen financial institution must be received in good order within 30 calendar days of the date the offer period ends.

If you have any questions, please contact your financial professional or Ohio National's Annuity Product Specialists at **833.810.4642**.

Sincerely,

Nicole Breitenstein, MBA
Second Vice President, Annuity Operations

*Enclosures*

| NOT A DEPOSIT | NOT FDIC INSURED | NOT GUARANTEED BY ANY BANK |
|---|---|---|
| NOT INSURED BY ANY GOVERNMENT AGENCY | | MAY LOSE VALUE |

Variable Annuity Issuer: The Ohio National Life Insurance Company
Variable Annuity Distributor: Ohio National Equities, Inc., Member FINRA

Variable annuities are sold by prospectuses, which contain more complete information including fees, sourrender charges ( contingent deferred sales) charges and other costs that may apply.

*To obtain current prospectuses, contact your financial professional or visit ohionational.com/fundinfo. Please read the product and fund prospectuses carefully before you invest or send money. Investors should consider the investment objectives, strategies, risk factors, charges and expenses of the underlying variable portfolios carefully before investing. The fund prospectus contains this and other information about the underlying variable portfolios.*

Early withdrawals or surrenders may be subject to surrender charges. Withdrawals are also subject to ordinary income tax and, if taken prior to age 59½, a 10% federal tax penalty may apply. Tax rules require that withdrawals be taken first from any unrealized gain in the contract. Federal and state tax laws applicable to this product are subject to change. You are encouraged to consult your personal tax adviser for further information.

There is no additional tax-deferral benefit for contracts purchased in an IRA or other tax-qualified retirement plans because such retirement plans already have tax-deferred status. An annuity should only be purchased in an IRA or qualified plan if the contract owner values some of the other features of the annuity and is willing to incur any additional costs associated with the annuity.

Neither asset allocation nor diversification assures a gain or protects against a loss in declining markets.

Variable annuities are long-term investment vehicles designed to accumulate money on a tax-deferred basis for retirement purposes. Upon retirement, variable annuities may pay out an income stream of a series of payments or a lump sum. If you die during the accumulation or payout phase, your beneficiary may be eligible to receive any remaining Contract Value.

**Guarantees are based upon the claims-paying ability of The Ohio National Life Insurance Company. Guarantees do not apply to the investment performance or account value of the underlying portfolios. As with any investment, investing in variable portfolios involves risk, including possible loss of principal.**

Product, product features and rider availability vary by state. Certain features may vary by broker-dealer. Issuer not licensed to conduct business in NY.

**THIS MATERIAL IS FOR GENERAL USE WITH THE PUBLIC AND IS NOT INTENDED TO PROVIDE INVESTMENT ADVICE FOR ANY INDIVIDUAL.**

T-394245 10-18

Certified Document Number: 82730026 - Page 4 of 7

The Ohio National Life Insurance Company
Ohio National Life Assurance Corporation

P.O. Box 5308
Cincinnati, Ohio 45201-5308
833.810.4642
ohionational.com

 **Ohio National Financial Services®**

## GMIB Buyout Offer Acceptance Form

Please Print

| Contract Number | Annuitant | Owner |
|---|---|---|
|  |  |  |

I understand that, by signing this form, I am accepting Ohio National's offer to enhance my Contract Value in return for my agreement to terminate my variable annuity and any associated rider(s). The Enhancement Amount is only calculated and added to the Contract Value at the time that this form and all necessary requirements (as outlined below) are received in good order. I also understand that Ohio National will waive any charges and deductions associated with surrender of my variable annuity.

As a result of my decision to accept the Buyout Offer *(Please Check One)*:

☐ I want to transfer / exchange my full Enhanced Contract Value to a financial product available from another financial institution. All required paperwork is either attached or will be submitted under separate cover. I understand that my offer acceptance, including the calculation of the Enhancement and its addition to my contract value, will not be processed until my transfer / exchange paperwork and any other requirements are received in good order, which must occur within thirty calendar days of the date the Buyout Offer acceptance window closes. (Please complete sections 5 – 6 only)

☐ I want to take receipt of the Enhanced Contract Value as a Full Surrender (Please complete Sections 1 – 6)

## Section 1 – Full Surrender

I understand that, by signing this form, I am requesting my annuity contract to be surrendered in full. The original contract is attached or, if not attached, I attest that I have done a diligent search and cannot find the contract. I agree that if the contract shall be found at a later date, it will be returned to the Company. I also agree, jointly and severally on behalf of my heirs, successors, and assignees, to indemnify the Company from any and all claims, suits, costs, or expenses to which it may be subjected or in any way made liable in consequence of the Company's compliance with the provisions of the original contract without its delivery to the Company.

## Section 2 – Taxation

Federal Taxation: If you do not select an option below, <u>we are required to withhold at least 10% of the taxable amount.</u>

☐ I DO NOT want to have federal income tax withheld from my withdrawal.

☐ I DO want to have _____ % federal income tax withheld from my withdrawal (must be less than 100%).

State Taxation: We will withhold state income tax on the taxable amount if: (1) you specifically request that we do so on this form and we are able to do so for your state; or (2) we are required to do so under state law. If you have questions regarding mandatory state withholding, please contact our Annuity Product Specialists at 833.810.4642.

☐ I DO NOT want to have state income tax withheld from my withdrawal.

☐ I DO want to have _____ % state income tax withheld from my withdrawal.

*Other federal or state withholding rules may apply to your withdrawal.*

I understand that I am liable for payment of federal and state income tax on any taxable portion of the requested payment and could be subject to tax penalties under the estimated tax payment rules if payments are not adequate.

**PLEASE COMPLETE ALL APPLICABLE SECTIONS OF THIS FORM AND SIGN.**

## Section 3 – Method of Disbursement (please check one)

☐ **Check** (Unless otherwise indicated, all checks will be sent via regular U.S. mail).

☐ **Wire Transfer** (There is a $25 fee to wire funds and your financial institution may also charge a fee for incoming wire transfers.)

☐ **Electronic Funds Transfer (EFT)** - Please complete the below agreement. A voided check or a copy of a voided check must be attached in order for us to process the withdrawal. EFT distributions cannot exceed $50,000. EFT may not be an option for custodial-owned contracts.

## Mail to: (please note: if not completed, the check will be sent to the address of record)

**Please note:** Checks must be made payable for the benefit of the contract owner(s).

Name: _____

Address: _____

City: _____     State: _____     Zip: _____

## Section 4 – Electronic Funds Transfer (EFT) Agreement for Direct Deposit

**Type of account:** ☐ Checking (please attach a voided check)     ☐ Savings (please attach a voided pre-encoded deposit slip)

| Name of the Financial Institution: | Account Number: |
|---|---|
| ABA/Transit Routing Number: | Name(s) as it appears on the account□: |
| Address of the Financial Institution: | Telephone Number of Financial Institution: |

For credit to my/our account all funds payable by The Ohio National Life Insurance Company or Ohio National Life Assurance Corporation (hereafter referred to as Ohio National) represent payment from my/our contract referenced above.

I/We authorize the Financial Institution named above to reimburse Ohio National, from this or any other account I/we may hold in such institution, for any payment received by the Financial Institution to which I/we was/were not entitled due to death prior to the due date of the payment.

I/We understand that Ohio National is relying on the information that I/we provided on this form, and further understand that Ohio National will not be liable for any losses or charges due to incorrect, outdated, or incomplete information that has been provided on this form.

Beginning in 2015, an individual may not make more than one non-taxable 60-day rollover from one IRA to another within each twelve month period. This limit applies to all types of IRAs including SEP, SIMPLE and Roth IRAs. By signing this form and instructing Ohio National to distribute funds as a non-taxable rollover, you are representing that you have not received a distribution from any other IRA in the preceding one-year period that was rolled over into an IRA.

**PLEASE COMPLETE ALL APPLICABLE SECTIONS OF THIS FORM AND SIGN.**

The undersigned hereby consents to the provisions contained herein:

**Section 5 -** By signing below, I acknowledge and understand:

I / We have received and reviewed the prospectus supplement for this offer.

That in return for my acceptance of this offer, I / We agree to terminate my variable annuity contract and any associated rider(s).

My contract value and Guaranteed Earnings Income Base (GEIB) value may change between the date of the offer letter and the date all requirements are received in good order. As a result, the dollar amount of the Enhancement may vary from what is shown in the offer letter.

I / We have discussed the implications of accepting this offer with my tax advisor and beneficiaries or I'm waiving the opportunity to do so.

I / We cannot revoke my acceptance of this offer once my acceptance is processed.

## Section 6 – Signature(s)

_____
Signature of Owner*                 Date

_____
Signature of Joint Owner*       Date

_____
Social Security Number of Contract Owner**

_____
Daytime Phone Number

**Certification:**

▢ Payment must be made to the contract owner(s). Ohio National is unable to pay or direct deposit to a third-party account.

\* I hereby certify that I, the above-signed, am the owner of this annuity contract or, if the contract is trust, custodial, corporate or partnership owned, that I am an authorized signatory thereof and that this request is being submitted in my capacity as an authorized signatory of the trust, custodial account, corporation or partnership. The above-signed hereby agrees, for ourselves, and, if any, our subsidiaries, agents, employees and directors at all times to indemnify and hold harmless The Ohio National Life Insurance Company (ONLIC), each of its subsidiaries, agents, employees and directors against any and all claims, liabilities, damages, demands, actions, controversies, charges, expenses and losses sustained or incurred by ONLIC's actions in making the change requested above and release the same from any liability arising from the execution of this transaction.

\*\* Under the penalties of perjury, I certify that the information provided on this form is true, correct, and complete. I have not been notified by the Internal Revenue Service that I am subject to withholding for under-reporting under Section 3406(a)(1)(c). I am a U.S. citizen or a U.S. resident alien.

Certified Document Number: 82730026 - Page 7 of 7



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   December 6, 2018

Certified Document Number:        82730026 Total Pages:  7

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

## 2018-84364 / Court: 164

 **Ohio National** Financial Services.

One Financial Way
Cincinnati, Ohio 45242

Post Office Box 237
Cincinnati, Ohio 45201-0237
513.794.6100
ohionational.com

September 21, 2018

Next Financial Group Inc
2500 Wilcrest Ste 620
Houston, TX 77042

RE:     **Ongoing Servicing**

To Whom It May Concern:

This letter pertains to the variable insurance policies and variable annuity contracts issued by The Ohio National Life Insurance Company and its subsidiary, Ohio National Life Insurance Assurance Corporation (collectively, "ONL"), for which your firm is designated as broker-of-record and your registered representatives (your "Representatives") are designated as representatives-of-record (the "Variable Contracts") and to the fixed insurance policies and annuity contracts, including fixed indexed annuities, issued by ONL for which your Representatives are designated as the agent of record (collectively with the Variable Contracts, the "Contracts").

As you know, we recently notified you of a termination of your firm's selling agreement with ONL and Ohio National Equities, Inc. for the distribution of the Contracts, effective December 12, 2018. However, ONL will continue to maintain the designations of your firm and your Representatives as broker-of-record and representative-of-record, respectively, on its records and is willing to continue to provide you with access to ON-Net (or other ONL advisor portal) and provide you customer information through ON-Net, customer service, written correspondence and, where available, through the DTCC (collectively the "Customer Information Services") to continue to service the Contracts, in the case of each Contract until the Contract is canceled or your firm is no longer designated as broker-of-record for the Contract, subject to the following paragraph.

So long as your firm and your Representatives continue to access information related to the Contracts through the Customer Information Services, your firm shall, and shall cause your Representatives to, comply with all applicable laws and regulations related to the servicing of the Contracts. Your firm shall, and shall cause your Representatives to, comply with ONL's policies and procedures regarding the security and privacy of information related to the Contracts made available to you or your Representative through the Customer Information Services, including compliance with all applicable cybersecurity laws and regulations. In addition, your firm shall hold harmless and indemnify ONL for any loss or expense suffered as a result of any violation of, or noncompliance with, any applicable law or regulation, related to the servicing of the Contracts or to any information accessed or information or orders entered via the Customer Information Services or any fraudulent use of the Customer Information Services.

*(Over)*

Certified Document Number: 82730027 - Page 1 of 2

**EXHIBIT E**

Your firm shall be deemed to have consented to the terms and conditions of this letter if your firm or your Representatives continue to access information related to the Contracts through the Customer Information Services. If your firm is unwilling to comply with the terms and conditions of this letter, please notify us so that we can restrict access to the Customer Information Services.

If you have any questions about any of the information in this letter, feel free to contact us at legal@ohionational.com.

Sincerely,

William C. Price
Senior Vice President & Assistant General Counsel



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   December 6, 2018

Certified Document Number:        82730027 Total Pages: 2

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

## CIVIL PROCESS REQUEST FORM

11/28/2018 9:10 AM
Chris Daniel - District Clerk Harris County
Envelope No. 29297877
By: C Ongrah
Filed: 11/28/2018 9:10 AM

> **FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING**
> **FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED**

**CASE NUMBER:** 2018-84364 _____ **CURRENT COURT:** 164TH District Court_____

**TYPE OF INSTRUMENT TO BE SERVED** (See Reverse For Types): Plaintiff's Original Petition

**FILE DATE OF MOTION:**

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

1.  NAME: The Ohio National Life Insurance Company

    ADDRESS: One Financial Way, Cincinnati, Ohio 45242

    AGENT, (*if applicable*): Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218


**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*): Plaintiff's Original Petition

    **SERVICE BY** (*check one*):
    XX **ATTORNEY PICK-UP**      ☐ **CONSTABLE**
    ☐ **CIVIL PROCESS SERVER** - Authorized Person to Pick-up: _____ Phone: _____
    ☐ **MAIL**      ☐ **CERTIFIED MAIL**
    ☐ **PUBLICATION:**
        Type of Publication:   ☐ **COURTHOUSE DOOR, or**
                    ☐ **NEWSPAPER OF YOUR CHOICE:** _____
    ☐ **OTHER,** *explain* _____

**ATTENTION:  Effective June1, 2010**

**For all Services Provided by the DISTRCT CLERKS OFFICE requiring our office to MAIL something back to the Requesting Party, we require that the Requesting Party provide a Self-Addressed Stamped Envelope with sufficient postage for mail back. Thanks you,**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

2.  NAME: Ohio National Life Assurance Corporation

    ADDRESS: One Financial Way, Cincinnati, Ohio 45242

    AGENT, (*if applicable*): Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Tx 78701-3218

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*): Plaintiff's Original Petition

    **SERVICE BY** (*check one*):
    XX **ATTORNEY PICK-UP**      ☐ **CONSTABLE**
    ☐ **CIVIL PROCESS SERVER** -  Authorized Person to Pick-up: _____ Phone: _____
    ☐ **MAIL**      ☐ **CERTIFIED MAIL**
    ☐ **PUBLICATION:**
        Type of Publication:   ☐ **COURTHOUSE DOOR, or**
                    ☐ **NEWSPAPER OF YOUR CHOICE:** _____
    ☐ **OTHER,** *explain* _____

Certified Document Number: 82743642 - Page 1 of 2

S:\FormsLib\Civil Bureau\Civ Fam Intake & Customer Svc\Civintake\Civil Process Request Form     Rev. 5/7/10

EXHIBIT A-4

**3.** NAME:  Ohio National Equities, Inc.

ADDRESS: 237 William Howard Taft Road, Cincinnati, OH 45219

AGENT, (*if applicable*):  Service of Process, Texas Secretary of State, P. O. Box 12079, Austin, TX 78711-2079

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*):  Plaintiff's Original Petition

**SERVICE BY** (*check one*):
XX **ATTORNEY PICK-UP**                    ☐ **CONSTABLE**

☐ **CIVIL PROCESS SERVER -**  Authorized Person to Pick-up: _____      Phone: _____

☐ **MAIL**                                ☐ **CERTIFIED MAIL**

☐ **PUBLICATION:**
   Type of Publication:       ☐ **COURTHOUSE DOOR,  or**
                             ☐ **NEWSPAPER OF YOUR CHOICE:** _____
☐ **OTHER,** *explain* _____


**4.** NAME:  Ohio National Financial Services, Inc.

ADDRESS:  One Financial Way, Cincinnati, Ohio 45242

AGENT, (*if applicable*):  Service of Process, Texas Secretary of State, P. O. Box 12079, Austin, TX 78711-2079

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*):  Plaintiff's Original Petition

**SERVICE BY** (*check one*):
XX **ATTORNEY PICK-UP**                    ☐ **CONSTABLE**

☐ **CIVIL PROCESS SERVER -**  Authorized Person to Pick-up: _____      Phone: _____

☐ **MAIL**                                ☐ **CERTIFIED MAIL**

☐ **PUBLICATION:**
   Type of Publication:       ☐ **COURTHOUSE DOOR,  or**
                             ☐ **NEWSPAPER OF YOUR CHOICE:** _____
☐ **OTHER,** *explain* _____


**ATTORNEY (OR ATTORNEY'S AGENT) REQUESTING SERVICE:**

NAME:   Andrew R. Harvin                    TEXAS BAR NO./ID NO. 09187900

MAILING ADDRESS:  440 Louisiana, Suite 2300, Houston, TX  77002

PHONE NUMBER:  713-228-5100                 FAX NUMBER:  713-228-6138

EMAIL ADDRESS:  aharvin@drhrlaw.com

> SERVICE REQUESTS WHICH CANNOT BE PROCESSED BY THIS OFFICE WILL BE HELD FOR 30 DAYS PRIOR TO CANCELLATION.  FEES WILL BE REFUNDED ONLY UPON REQUEST, OR AT THE DISPOSITION OF THE CASE. SERVICE REQUESTS MAY BE REINSTATED UPON APPROPRIATE ACTION BY THE PARTIES.

Certified Document Number: 82743642 - Page 2 of 2

S:\FormsLib\Civil Bureau\Civ Fam Intake & Customer Svc\Civintake\Civil Process Request Form                    Rev. 5/7/10



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   December 6, 2018

Certified Document Number:        82743642 Total Pages:  2

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

12/7/2018 9:24 AM
Chris Daniel - District Clerk Harris County
Envelope No. 29571225
By: Lakeisha Williams
Filed: 12/7/2018 9:24 AM

CAUSE NO. 2018-84364

| | | |
|---|---|---|
| NEXT FINANCIAL GROUP, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, TEXAS |
| THE OHIO NATIONAL LIFE | § | |
| INSURANCE COMPANY, THE OHIO | § | |
| NATIONAL LIFE ASSURANCE | § | |
| CORPORATION, OHIO NATIONAL | § | |
| EQUITIES, INC. and OHIO NATIONAL | § | |
| FINANCIAL SERVICES, INC., | § | |
| | § | |
| *Defendants.* | § | 164TH JUDICIAL DISTRICT |

## DEFENDANTS' ORIGINAL ANSWER

Defendants The Ohio National Life Insurance Company, The Ohio National Life Assurance Corporation, Ohio National Equities, Inc., and Ohio National Financial Services, Inc. file their Original Answer to the Original Petition filed by Plaintiff Next Financial Group, Inc. ("Plaintiff"), and state:

## GENERAL DENIAL

Subject to such admissions and stipulations as may be made at or before time of trial, Defendants deny generally and specially the material allegations in Plaintiff's Original Petition, pursuant to Tex. R. Civ. P. 92, and demand strict proof thereof in accordance with the requirements of the laws of this state.

## AFFIRMATIVE DEFENSES

1.    Plaintiff's claims are barred by the terms of the contract(s) at issue.

2.    Plaintiff's claims are barred by the failure of a condition precedent.

EXHIBIT A-5

3.      Plaintiff's claims for equitable relief are barred because Plaintiff has an adequate remedy at law and/or because such claims are premised on self-created harm.

4.      Defendants reserve the right to assert additional affirmative defenses as the case proceeds.

## **PRAYER**

Defendants request the following relief:

1.      That Plaintiff take nothing by reason of its suit;

2.      That Defendants be dismissed with their costs; and

3.      That Defendants have such other and further relief, both general and special, at law and in equity, to which they may show themselves justly entitled.


Respectfully submitted,


By:____/s/ Bill E. Davidoff_____
          Bill E. Davidoff
          Texas Bar No. 00790565
          bill.davidoff@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, TX 75202
Tel:  214.939.2000
Fax:  214.939.2090

ATTORNEYS FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 7, 2018, a copy of foregoing document was electronically filed via efile.txcourts.gov, which will automatically serve a Notice of Electronic Filing on the following attorney:

Andrew R. Harvin
aharvin@drhrlaw.com
Doyle, Restrepo, Harvin & Robbins, LLP
The Lyric Centre
440 Louisiana Street, Suite 2300
Houston, Texas 77002
*Attorneys for Plaintiff*

/s/ Bill E. Davidoff
Bill E. Davidoff