Case 4:18-cv-04652 Document 32 Filed on 08/30/19 in TXSD Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
September 03, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NEXT FINANCIAL GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | CIVIL ACTION NO. 4:18-cv-4652 |
| THE OHIO NATIONAL LIFE | § | |
| INSURANCE COMPANY, et al., | § | |
| | § | |
| Defendant. | § | |

**AMENDED MEMORANDUM AND RECOMMENDATION**

Pending in this case is Plaintiff NEXT Financial Group's Motion for Partial Summary Judgment (Document No. 11) and Defendants Ohio National Life Insurance Co., Ohio National Life Assurance Corp., Ohio National Equities, Inc., and Ohio National Financial Services, Inc.'s Cross Motion for Partial Summary Judgment (Document No. 18). Both sides, in their respective Motions for Partial Summary Judgment, seek summary judgment on Plaintiff's Declaratory Judgment claim and Plaintiff's breach of contract claim. Having considered the cross Motions for Partial Summary Judgment, the responses and additional briefing, the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Plaintiff's Motion for Partial Summary Judgment (Document No. 11) and Defendants' Cross Motion for Partial Summary Judgment (Document No. 18) both be DENIED.[1]

---

[1] This Amended Memorandum and Recommendation is entered to correct an inconsistency between the recommendation language on page 1 and that on page 8.

1

I.  **Background and Procedural History**

This case arose following Defendants' termination of a "Selling Agreement" it had entered into with Plaintiff NEXT Financial Group, Inc. ("NEXT") in 2001. That "Selling Agreement," entered into between Defendants[2] and NEXT, allowed NEXT and its representatives to sell Defendants' variable insurance contracts/policies. The Selling Agreement specifically provided in that respect: "[Defendants] hereby appoint [NEXT] to supervise solicitations of the Contracts, and to facilitate solicitations of sales of the Contracts which are described in the Schedule(s) of Commissions attached hereto." By letter dated September 21, 2018, Defendants terminated the "Selling Agreement," effective December 12, 2018, and advised NEXT that "all individual annuity trail compensation will cease at that time. All group annuity trial compensation and life insurance renewal commissions will continue to be paid per the terms of the selling agreement." This suit, filed by NEXT in state court, and removed by Defendants on the basis of diversity jurisdiction, followed. NEXT does not complain about the termination of the "Selling Agreement," nor could it given the "Termination" provision in the Selling Agreement which stated, "This agreement may be terminated at the option of any party upon sixty (60) days written notice to the other parties." Instead, NEXT complains in this case, in both a Declaratory Judgment claim and a breach of contract claim, about that part of the September 21, 2018, letter which stated that "all individual annuity trail compensation w[ould] cease [on December 12, 2018.]" NEXT now seeks partial summary judgment on its Declaratory Judgment claim and its breach of contract claim, arguing that Defendants must continue to pay it and its representatives trail commissions on the individual

---

[2] The Selling Agreement was by and between The Ohio National Life Insurance Company, Ohio National Life Assurance Corporation, and Ohio National Equities, Inc. and NEXT. Ohio National Financial Services, Inc. is the parent company of Ohio National Life Insurance Company.

variable annuity contracts/policies that were sold pursuant to the Selling Agreement.[3] Defendants, in response and in their own Motion for Partial Summary Judgment, maintain that their obligation to pay trail commissions to NEXT and its representatives on individual variable annuity contracts/policies that were sold pursuant to the Selling Agreement ended when the Selling Agreement was terminated.

## II.  Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A moving party must "demonstrate the absence of a genuine issue of material fact" in order to meet its burden. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the party meets the burden, it shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

---

[3] The Declaratory Judgment claim in Plaintiff's First Amended Complaint seeks a declaration that "Ohio National is obligated to pay trail commissions on all individual variable annuity contracts issued by Ohio National until the particular contracts are surrendered or annuitized," and a declaration that the "letter of September 21, 2018 referenced in paragraph 20 [ ] is invalid as a matter of law since the letter's purported indemnity obligation (i) has not been agreed to by NEXT in writing, as required to amend the Selling Agreement and (ii) is without consideration." First Amended Complaint (Document No. 24) at 9. In its Motion for Partial Summary Judgment, NEXT is only seeking summary judgment on the first part of its Declaratory Judgment claim – that related to Defendants' alleged obligation to continue to pay trail commissions.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price- Macemon*, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2513 (1986).

### III. Discussion

Pursuant to the terms of the "Selling Agreement," and not disputed by either side, this case and the claims alleged are governed by Ohio law. Under Ohio law, "[a] contract is an agreement, upon sufficient consideration, between two or more persons to do or not to do a particular thing." *Nilavar v. Osborn* (2000), 137 Ohio App.3d 469, 483, 738 N.E.2d 1271 (quoting *Lawler v. Burt* (1857), 7 Ohio St. 340, 350, 1857 WL 52); *see also Powell v. Grant Med. Ctr.*, 2002-Ohio-443, ¶ 27, 148 Ohio App. 3d 1, 10, 771 N.E.2d 874, 881. To prove the existence of a contract, a plaintiff must show that the parties consented to the terms of the contract, that both parties had a "meeting of the minds," and that the terms of the contract are definite and certain. *Powell v. Grant Med. Ctr.*, 2002-Ohio-443, ¶ 27, 148 Ohio App. 3d 1, 10, 771 N.E.2d 874, 881; *see also McSweeney v. Jackson* (1996), 117 Ohio App.3d 623, 631, 691 N.E.2d 303. In order to prove breach of contract, a plaintiff must show "existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp*, 649 N.E.2d 42, 44 (1994).

In interpreting a contract, Ohio law requires the Court to rely on the language of contract and not any extraneous characterizations made by the parties. *W.-S. Life Assurance Co. v. Kaleh*, 879 F.3d 653, 663 (5th Cir. 2018); *see also Aultman Hosp. Ass'n v. Comty. Mut. Ins. Co.*, 46 Ohio St.3d 51, 544 N.E.2d 920, 924 (1989) ("[C]ourts will not give the contract a construction other than that which the plain language of the contract provides."). This Court must also understand words for their common meaning and avoid interpretations that lead to portions of the contract being rendered meaningless or extraneous. *Lupo, LLC v. Reynolds & Reynolds Co.*, 729 F. Supp. 2d 350, 356 (D. Me. 2010) (citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 16 (1st Cir. 2010)); *see also State v. Bethel*, 110 Ohio St.3d 416, 854 N.E.2d 150 (2006). Additionally, this ordinary meaning must not manifest absurdity or contrary meaning is clearly evidenced from made clear through the overall contract. *Cincinnati Ins. Co. v. Greenmont Mut. Hous. Corp.*, 2014-Ohio-1973, ¶ 21 (quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978)). If the terms of a contract may reasonably be understood to have more than one meaning, only then may they be considered ambiguous. *Envision Waste Servs., LLC v. Cty. of Medina*, 83 N.E.3d 270, 276 (2017) (citing *Town & Country Co–Op, Inc. v. Sabol Farms, Inc.*, 2012-Ohio-4874, ¶ 15). Where a contract is found to be ambiguous, summary judgment is improper. *Id.*; *see also Bluemile, Inc. v. Atlas Indus. Contractors, Ltd.*, 102 N.E.3d 579, 584 (2017) ("Contract language is ambiguous if its meaning cannot be determined from the four corners of the contract or if the contract language is susceptible to two or more conflicting, yet reasonable interpretations.").

The cross Motions for Partial Summary Judgment both seek a determination, as a matter of law, about whether Defendants are obligated to continue making trail commission payments to NEXT following the termination of the Selling Agreement. While NEXT relies on the

"Commissions Payable" provision in the "Selling Agreement" to support its argument that continued trial commissions are due, Defendants point to language in the Schedule of Commissions, which, Defendants argue, only require them to pay trail commissions while the Selling Agreement is in effect.

The "Selling Agreement" is not lengthy, nor is it complicated. It provides for NEXT to supervise and sell "certain variable insurance contracts/policies" issued by Defendants the Ohio National Life Insurance Company and its subsidiary, Ohio National Life Assurance Corporation. Under section 9 of the "Selling Agreement," "Commissions payable in connection with the contracts shall be paid to [NEXT], or its affiliated insurance agency, according to the Commission Schedule(s) relating to [the Selling Agreement] as they may be amended from time to time and in effect at the time the Contract payments are received by [Defendants]." The Commission Schedule attached to the "Selling Agreement" was both referenced in, and became part of, the Selling Agreement. *See* section 25 of "Selling Agreement " (This agreement is not complete unless it includes a Commission Schedule and the General Letter of Recommendation, both of which are incorporated herein by reference.").

NEXT relies upon the following language in paragraph 9 of the Selling Agreement for its argument that the trail commissions should survive the termination of the Selling Agreement:

> The terms of compensation shall survive this Agreement unless the Agreement is terminated for cause by [Defendants], provided that [NEXT] remains a broker-dealer in good standing with the NASD and other state and federal regulatory agencies and that [NEXT] remains the broker-dealer of record for the account.

Defendants, in contrast, rely on the following provision in the Commission Schedule for their argument that their obligation to continue making trail payments ended when the Selling Agreement was terminated:

6

>Trail commissions will continue to be paid to the broker dealer of record while the Selling Agreement remains in force and will be paid on a particular contract until the contract is surrendered or annuitized.

The trail commission language in the Commissions Schedule, separated by the word "and," requires Defendants to continue paying trail commissions "while the "Selling Agreement remains in force" *and* "until the contract is surrendered or annuitized." The word "and", as argued by Defendants, is conjunctive, and must be read as such. NEXT's argument that the word "and" should not be read as meaning "and" at all, and should be read as requiring the payment of trail commissions *either* while the Selling Agreement remained in force, or until the contract was surrendered or annuitized, is an interpretation that is inconsistent with the meaning of the word "and." But, that interpretation of the language in the Selling Agreement" does not decide the issue, because, as argued by NEXT, the language in section 9 of the Selling Agreement states that the "terms of compensation shall survive [the Selling Agreement]." The only "terms of compensation" in the Selling Agreement are those set forth in the Commissions Schedule. That means that the survival of the "terms of compensation" in section 9 of the Selling Agreement is not entirely consistent with the "trail commission" language in the Commission Schedules, for how could the "terms of compensation" "survive" the Selling Agreement if all commission payments for the individual variable annuity contracts under the Commissions Schedule are conditioned upon the Selling Agreement remaining "in force."

When the Selling Agreement and attached Commissions Schedule are read together, the provisions relied upon by each side cannot be harmonized. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (1996) ("a writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole"). That means that the contract is ambiguous as to

7

whether Defendants were obliged, following the termination of the Selling Agreement, to continue making trail payments to NEXT. *See Fouty v. Ohio Dep't of Youth Servs.*, 2006-Ohio-2957, ¶ 64, 167 Ohio App. 3d 508, 528, 855 N.E.2d 909, 925 (Ohio Ct. App. 2006) ("Contracts that are, by their terms, clear and unambiguous require no real interpretation or construction, and courts will enforce such contracts as written. . . . However, when contracts contain ambiguous *or conflicting terms*, it is proper for a court to consider extrinsic evidence, i.e., evidence outside the four corners of the contracts, in order to determine the parties' intent.") (emphasis added); *see also The First State Bank v. Peoples Bank, N.A.*, No. 2:17-CV-1156, 2019 WL 1317886, at *3 (S.D. Ohio Mar. 22, 2019) ("Under Ohio contract law, 'construction of the contract should attempt to harmonize all the provisions rather than produce conflict in them.' . . . Accordingly, 'no provision of the contract should be ignored as inconsistent if there exists a reasonable interpretation which gives effect to both.'"). Summary judgment is therefore not available to either side on NEXT's declaratory judgment claim or its breach of contract claim.

## IV. Conclusion and Recommendation

Based on the foregoing, and the conclusion that the provisions relied upon by both sides cannot be harmonized and that the contract at issue is, as a result, ambiguous, the Magistrate Judge RECOMMENDS that Plaintiff's Motion for Partial Summary Judgment (Document No. 11) and Defendants' Cross Motion for Summary Judgment (Document No. 18) both be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d

89 (5th Cir. 1982), cert. denied, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 30th day of August, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE